UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHELE B.,

                     Plaintiff,               **DECISION AND ORDER**

        v.

                                          1:20-CV-00975 EAW

COMMISSIONER OF SOCIAL SECURITY,

                     Defendant.
_____

## <u>INTRODUCTION</u>

Represented by counsel, Plaintiff Michele B. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 11; Dkt. 12), and Plaintiff's reply (Dkt. 14). For the reasons discussed below, the Commissioner's motion (Dkt. 12) is granted and Plaintiff's motion (Dkt. 11) is denied.

- 1 -

## BACKGROUND

Plaintiff protectively filed her application for DIB on February 22, 2017.  (Dkt. 10 at 18, 158-159).[1]  In her application, Plaintiff alleged disability beginning November 13, 2015, due to right shoulder torn rotator cuff and lumbar spine injury.  (*Id.* at 18, 72).  Plaintiff's application was initially denied on May 17, 2017.  (*Id.* at 18, 71-80).   At Plaintiff's request, a video hearing was held before administrative law judge ("ALJ") Gregory Moldafsky on November 20, 2018.  (*Id.* at 18).  Plaintiff appeared in West Seneca, New York, and the ALJ presided over the hearing from Alexandria, Virginia. (*Id.*).   On April 30, 2019, the ALJ issued an unfavorable decision.  (*Id.* at 18-27).  Plaintiff requested Appeals Council review; her request was denied on June 12, 2020, making the ALJ's determination the Commissioner's final decision.  (*Id.* at 4-9).  This action followed.

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more

---

[1]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.    Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. § 404.1520(c).  If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id*. § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 404.1509), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. § 404.1520(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.     The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520.  Initially, the ALJ determined that Plaintiff meets the insured status requirements of the Act through December 31, 2020. (Dkt. 10 at 20).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since November 13, 2015, the alleged onset date.  (*Id*.).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of right rotator cuff injury status post remote repair with subsequent re-tear, degenerative disc disease lumbar spine status post lumbar fusions, and obesity status post gastric bending. (*Id.* at 21).  The ALJ further found that Plaintiff's medically determinable impairments of insomnia, gastroesophageal reflux disease, and vitamin D deficiency were non-severe. (*Id*.).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (*Id*). The ALJ particularly considered the criteria of Listings 1.02 and 1.04, as well as Plaintiff's obesity in reaching his conclusion.  (*Id.*).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except:

> [S]he can stand and walk 4 hours in an 8-hour workday; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally stoop, balance, kneel, and crouch; never crawl; occasionally push and pull with right upper extremity; occasionally perform overhead reaching with the right upper extremity; frequently reach in all other directions with the right upper extremity; and never work at unprotected heights.

(*Id.* at 21).   At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.   (*Id.* at 25).   At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of inspector hand packager, cashier II, and electrical accessories assembler.   (*Id.* at 26).   Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act at any time from the alleged onset date through the date of the ALJ's decision.   (*Id.* at 27).

II.     **The Commissioner's Determination is Supported by Substantial Evidence and Free from Reversible Error**

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that (1) the ALJ erred in assessing several medical opinions of record, and (2) the ALJ's determination that Plaintiff was capable of light work was not supported by substantial evidence because the ALJ failed to consider the consistency of the medical opinions with each other and with the record as a whole.  (Dkt. 11-1 at 17-30).   The Court has considered these arguments and, for the reasons discussed below, finds them without merit.

A.     **Assessment of Medical Opinion Evidence**

Plaintiff's first argument is that the ALJ erred in evaluating the medical opinions of record.   Specifically, she argues that the ALJ did not meaningfully assess the opinions of her treating surgeon, Douglas Moreland, M.D., or adequately explain his reasoning for giving heightened weight to other medical opinions without accounting for the portions of

those opinions that conflict with the RFC determination.  The Court finds no merit in either

contention.

In assessing a disability claim, an ALJ must consider and weigh the various medical

opinions of record.  Pursuant to the Commissioner's regulations:

> the ALJ must consider various factors in deciding how much weight to give
> to any medical opinion in the record, regardless of its source, including: (i)
> the frequency of examination and the length, nature and extent of the
> treatment relationship; (ii) the evidence in support of the . . . physician's
> opinion; (iii) the consistency of the opinion with the record as a whole; (iv)
> whether the opinion is from a specialist; and (v) other factors brought to the
> Social Security Administration's attention that tend to support or contradict
> the opinion.

*Pike v. Colvin*, No. 14-CV-159-JTC, 2015 WL 1280484, at *5 (W.D.N.Y. Mar. 20, 2015)

(quotation and alterations omitted).

Because Plaintiff's claim was filed before March 27, 2017, the ALJ was required to

apply the treating physician rule, under which a treating physician's opinion is entitled to

"controlling weight" if it is "well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with the other substantial evidence in [the]

case record[.]" 20 C.F.R. § 404.1527(c)(2).  Under the treating physician rule, if the ALJ

declines to afford controlling weight to a treating physician's medical opinion, he or she

"must consider various factors to determine how much weight to give to the opinion."

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted).

An ALJ's failure to explicitly apply the requisite factors is a "procedural error." *Estrella*

*v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (quotation omitted).  However, such error is

harmless if "a searching review of the record" confirms "that the substance of the treating

physician rule was not traversed." *Id.* (quotations omitted).

Whatever weight the ALJ assigns to the treating physician's opinion, he must "give good reasons in [his] notice of determination or decision for the weight [he gives to the] treating source's medical opinion." 20 C.F.R. § 404.1527(c)(2); *see also Harris v. Colvin*, 149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is the so-called 'good reasons rule,' which is based on the regulations specifying that 'the Commissioner "will always give good reasons"' for the weight given to a treating source opinion." (quoting *Halloran*, 362 F.3d at 32)). "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific. . . ." *Harris*, 149 F. Supp. 3d at 441 (internal quotation marks omitted).

### 1.    Assessment of Dr. Moreland's Opinions

In this case, Dr. Moreland, Plaintiff's treating surgeon, opined on June 6, 2017 that Plaintiff could return to light duty work part time with restrictions of no lifting greater than 5 pounds and no excessive bending, twisting, and pulling, no more than two hours of each workday. (Dkt. 10 at 608). This opinion followed Plaintiff's March 1, 2017 surgery performed by Dr. Moreland, which included screw removals and laminotomies at L3, L4, and L5, and a lumbar fusion at L3-4. (*Id.* at 23). In addition, throughout the course of Dr. Moreland's treatment of Plaintiff between 2015 and 2018, he assigned her with temporary impairment ratings ranging from 25% to 100%.

The ALJ afforded limited weight to Dr. Moreland's June 6, 2017 opinion. (*Id*. at 24-25). He explained that the June 2017 opinion understated Plaintiff's functional capacity and was out of proportion with Plaintiff's own description of her daily activities and the type and degree of treatment she required. The ALJ also gave partial weight to the opinions

of Dr. Moreland and other providers to the extent they opined that Plaintiff had various temporary impairment ratings. The ALJ assigned limited weight to these opinions because the ratings were temporary in nature and secondary to Plaintiff's surgeries. Moreover, the ALJ explained that the ultimate issue of disability is one reserved for the Commissioner and that to the extent the opinions relied on workers' compensation standards, they were different from the standards utilized by the Social Security administration.

Plaintiff first generally argues that the ALJ failed to properly apply the treating physician rule in considering Dr. Moreland's opinions because Dr. Moreland treated Plaintiff seventeen times between October 2015 and May 2018, including the two surgical procedures of a lumbar fusion in 2017 and a left sacroiliitic joint fusion with implants in 2018. Plaintiff argues that the ALJ did not consider that Dr. Moreland was a long-term treating specialist while weighing his opinions. But the ALJ's decision makes clear that he thoroughly reviewed Dr. Moreland's treatment records, including those from the surgeries he performed. In any event, the Court will not remand a matter for failure to explicitly state that each of the relevant factors were considered where "a searching review of the record shows that the ALJ has provided 'good reasons' for its weight assessment." *Guerra v. Saul*, 778 F. App'x 75, 77 (2d Cir. 2019) (quoting *Estrella*, 925 F.3d at 95-96). Here, the ALJ provided the requisite good reasons for not fully crediting Dr. Moreland's opinions.

With respect to the June 2017 opinion that Plaintiff could return to part time light duty work with restrictions, the ALJ explained his reasoning for only partially crediting the opinion. The ALJ concluded that the opinion understates Plaintiff's functional capacity

and was not supported by Plaintiff's own description of her abilities and treatment records. Similarly, it was appropriate for the ALJ to only partially credit the opinion inasmuch as he concluded that the opinion was a temporary rating secondary to surgery. *See Sarita P. v. Comm'r of Soc.* Sec., No. 20-CV-00131, 2021 WL 1600295, at \*6 (W.D.N.Y. Apr. 23, 2021) (holding it reasonable for ALJ to give little weight to an opinion containing a temporary restriction related to breast pain following a lumpectomy); *John B. v. Comm'r of Soc. Sec.*, No. 19-CV-01113, 2021 WL 681283, at \*5 (W.D.N.Y. Feb. 22, 2021) (finding that ALJ appropriately gave only limited weight to treating physician opinions which were "temporary opinions, assessing plaintiff's present functioning"). For example, records from Dr. Moreland from five months later in November 2017 reflect increased work abilities, including no restrictions on the number of hours, and an ability to lift up to 10 pounds. (Dkt. 10 at 653). A December 2017 treatment record reflects that Plaintiff was working, (*id.* at 647), and a January 2018 record indicates that Plaintiff was anxious to get back to a full functional work capacity (*id.* at 647). To be sure, those records reflect numerous complaints of pain and discomfort, but they also document examinations showing intact strength and reflexes. (*Id.*). And following Plaintiff's February 2018 lumbar surgery by Dr. Moreland, treatment records indicate that Plaintiff would be released to light work duties with restrictions in two weeks' time. (*Id.* at 635). May 2018 records reflect that Plaintiff was "doing extremely well and pleased with her result." (*Id.* at 685). She reported "essentially no pain in this area" and that she "is very happy now." (*Id.*). It was not error for the ALJ to conclude that the June 2017 opinion was temporary and in conflict with Plaintiff's overall abilities based on the information contained in Dr.

Moreland's later records.

Of course, it was also appropriate for the ALJ to note that the ultimate question of disability is one reserved to the Commissioner, which is well established. *See Taylor v. Barnhart*, 83 F. App'x 347, 349 (2d Cir. 2003). "If an opinion effectively decides the ultimate issue—that is, that the claimant is disabled—it opines on a matter reserved to the Commissioner and to that extent is not considered a medical opinion." *Kathryn D. v. Comm'r of Soc. Sec.*, No. 19-CV-1550-LJV, 2021 WL 195342, at *2 (W.D.N.Y. Jan. 20, 2021). Accordingly, it was proper for the ALJ to decline to defer to opinions on the ultimate issue of Plaintiff's ability to maintain gainful employment.

Finally, to the extent that Dr. Moreland's and other physicians' ratings opinions were provided for workers' compensation purposes, the ALJ explained that "although the functional evaluations associated with these various ratings are generally consistent with a reduced range of light work with postural and manipulative limitations, workers' compensation impairment ratings reflect standards for determining disability that are different from those utilized by the Social Security Administration." (*Id.* at 25). Disability is defined differently under workers' compensation rules because those assessments do not constitute function by function medical assessments of the ability to perform basic work activities and instead relate to a claimant's ability to perform a particular past job, which is not inconsistent with the ALJ's conclusion here that Plaintiff was precluded from performing her past relevant work. Accordingly, this was an appropriate consideration for the ALJ to address and consider when assessing the weight to provide to the opinions. *See Alexis L. v. Comm'r of Soc. Sec.*, No. 1:19-CV-1669-DB, 2021 WL 878473, at *11

- 11 -

(W.D.N.Y. Mar. 9, 2021) ("While Plaintiff notes that treating sources claimed she had a temporary 100% impairment for worker's compensation purposes, the ALJ correctly noted that such statements did not reflect SSA's standards and lacked value for assessing RFC. Furthermore, these sources did not provide assessments of Plaintiff's functional limitations; rather, they indicated Plaintiff had a 100% temporary disability for purposes of worker's compensation); *Maria J. v. Comm'r of Soc. Sec.*, No. 19-CV-0899MWP, 2020 WL 7296751, at *7 (W.D.N.Y. Dec. 11, 2020) (collecting cases holding that opinions offered in workers' compensation cases apply different standards and are not binding in the Social Security context).

In short, the ALJ provided appropriate, good reasons to afford less than controlling weight to a treating physician's opinion, and the Court finds no error in the ALJ's assessment. For these reasons, the ALJ's determination that Dr. Moreland's opinion was entitled to only limited weight is well-supported by the ALJ and does not warrant remand.

## 2.    Assessment of the Opinions of Dr. Brauer and Dr. Miller

Plaintiff argues that the ALJ failed to adequately explain the assessment of two medical opinions to which he accorded heightened weight. Specifically, Plaintiff argues that the ALJ failed to explain how he conferred heightened weight to the opinions of David Brauer, M.D.[2], and D. Miller, D.O., but did not expressly account for the portions of their opinions that conflict with the RFC determination.

Dr. Brauer, a consultative examiner, examined Plaintiff on May 3, 2017. (Dkt. 10

---

[2]    The ALJ's decision mistakenly refers to Dr. Brauer as Dr. Bauer. (Dkt. 10 at 24). The Court has no doubt this is a simply a typographical error and the parties do not raise the issue or contend otherwise.

at 574-78).  Plaintiff reported to Dr. Brauer that she did not have much pain in or difficulty with her shoulder and did not take any medication for shoulder pain, but did take pain medication for her low back.  (*Id.* at 574).  She indicated that she cooks daily, shops and cleans once a week, and is able to shower and dress herself daily.  (*Id.* at 575).  Plaintiff told Dr. Brauer that she enjoyed painting, reading, watching tv, and drawing.  (*Id.*).  Upon examination, Dr. Brauer concluded that: Plaintiff had no limitation in her ability to sit or stand; moderate to marked limitation in her ability to walk long distances due to back pain; moderate to marked limitation in her ability to push, pull, lift, or carry heavy objects or perform activities requiring full or repetitive squatting or bending due to back pain; and moderate to marked limitation in activities requiring reaching.  (*Id.* at 577).

Dr. Miller completed his assessment on May 17, 2017.  (*Id.* at 70-80).  He concluded that Plaintiff can occasionally lift 20 pounds and frequently lift 10 pounds; stand and/or walk about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; can occasionally stoop and crouch with limited reaching and in front and/or laterally and overhead with the upper right extremity.  (*Id.* at 76-78).

The ALJ gave great weight to Dr. Brauer's opinion.  He concluded that Dr. Brauer's opinion was generally consistent with Plaintiff's medical records as a whole, and consistent with the type and degree of treatment she received.  (*Id.* at 24).  He likewise gave significant weight to the opinion of Dr. Miller.  The ALJ concluded that the limitations outlined by Dr. Miller "are generally consistent with the medical evidence viewed as a whole and with [Plaintiff's] description of her activities, including working part-time and driving regularly."  (*Id.* at 24).  However, the ALJ concluded that based on the totality of the

evidence, Plaintiff has more significant limitations in sitting and standing than those imposed by Dr. Miller.  (*Id.* at 24).

Plaintiff argues that while Dr. Brauer found moderate to marked limitations for reaching and Dr. Miller found her only able to do "occasional" reaching, these opinions conflict with the RFC which allows for frequent reaching and provide an example demonstrating that the ALJ's assessment was flawed.  The Court finds no error.

While the "ALJ cannot arbitrarily substitute his own judgment for a competent medical opinion," *Rosa*, 168 F.3d at 79 (quotation omitted), "the ALJ's RFC finding need not track any one medical opinion." *O'Neil v. Colvin*, No. 13-CV-575 (JTC), 2014 WL 5500662, at *6 (W.D.N.Y. Oct. 30, 2014).  "Although [an] ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).  However, "[a]s a general rule, where the transcript contains only diagnostic evidence and no [supporting] opinion from a medical source about functional limitations . . . , to fulfill the responsibility to develop a complete record, the ALJ must recontact [an acceptable medical] source, order a consultative examination, or have a medical expert testify at the hearing." *Skupien v. Colvin*, No. 13-CV-403S, 2014 WL 3533425, *6 (W.D.N.Y. July 16, 2014) (quotation and citation omitted).

Moreover, under the regulations applicable to Plaintiff's claim, a consultative examiner's opinion is not entitled to any particular weight, and an ALJ is free to discount

those portions of the opinion that are not supported by the other evidence of record.  *See Dukes v. Comm'r of Soc. Sec.*, No. 6:19-CV-06025 EAW, 2020 WL 5651610, at *5 (W.D.N.Y. Sept. 23, 2020) ("Dr. Chu and Dr. Jonas were both consultative examiners and their opinions were thus not entitled to any particular weight; instead, the ALJ was 'free to disregard identified limitations . . . not supported by the evidence of record.'" (quoting *Torbicki v. Berryhill*, No. 17-CV-386 (MAT), 2018 WL 3751290, at *5 (W.D.N.Y. Aug. 8, 2018))).

Here, while certainly more explanation could have been provided, the ALJ's decision is not so barren in explanation that the Court is unable to discern his reasoning or the information he considered in crafting Plaintiff's RFC.  Nor is this a circumstance where there was no medical opinion evidence and the ALJ crafted an RFC based on his own assessment of the treatment records alone.  Rather, there were multiple opinions in the record which the ALJ afforded partial weight, limited weight, and great weight, and from those opinions and the other evidence of record, including the physical examination findings and Plaintiff's own testimony about her pain level and daily activities, he determined Plaintiff's functional capabilities.  It was not improper for the ALJ to consider Plaintiff's treatment plan for her shoulder, her engagement in part-time work, and ability regularly drive herself in formulating her RFC.  *See Burkey v. Colvin*, 284 F. Supp. 3d 420, 425 (W.D.N.Y. 2018) ("Plaintiff's part-time job in food preparation and activities of daily living, including light cooking and shopping, while not dispositive of her ability to perform full-time work, were appropriate factors for the ALJ to consider in weighing the medical opinions and other evidence of record (20 C.F.R. § 404.1527(c)), and do suggest a level of

functioning and stamina that is inconsistent with the extent of plaintiff's claimed limitations, as well as with the more extreme limitations opined by [medical opinion evidence].").

Accordingly, the Court finds no error in this regard and deems Plaintiff's arguments to the contrary unavailing.

### B.   <u>Consistency of Medical Opinion Evidence</u>

Finally, Plaintiff contends that the ALJ failed to address the consistency of the opinions with each other and with the record as a whole.  She argues that that some opinions in the record found more restrictive limitations in certain functional areas that are not accounted for in the RFC and that objective evidence supports more restrictive limitations.

Plaintiff's arguments do not require remand.  Plaintiff contends that the assessment of medical opinion evidence is not consistent with the overall record by merely citing to evidence that she contends the ALJ should have weighed differently.  It is not the function of this Court to re-weigh evidence or consider *de novo* whether Plaintiff is disabled.  *See Urena v. Comm'r of Soc. Sec.*, 379 F. Supp. 3d 271, 278 (S.D.N.Y. 2019) ("Importantly, it is not a reviewing court's function to determine de novo whether [a claimant] is disabled." (alteration in original) (internal quotation and citation omitted)).  Rather, "[a]bsent a legal error, the Court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the Court might have ruled differently had it considered the matter in the first instance." *Russell v. Saul*, 448 F. Supp. 3d 170, 175 (D. Conn. 2020); *see also Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must

be given conclusive effect so long as they are supported by substantial evidence." (quotation omitted)).

The ALJ's decision makes clear that the RFC is "supported by the evidence of record, medical findings, the opinions of the examining physicians, [Plaintiff's] level of activity, and [Plaintiff's] testimony at the hearing."  (Dkt. 10 at 25).  The Court has reviewed the ALJ's written determination, as well as the administrative record, and finds that the ALJ's determination is supported by substantial evidence. *See Matta*, 508 F. App'x at 56 (noting that when deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.").  While the record unquestionably supports that Plaintiff has some limitations in functioning, the ALJ adequately explained how he arrived at his determination.

Accordingly, there is no basis for the Court to disturb the Commissioner's finding of non-disability.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 12) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 11) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:  November 27, 2021
        Rochester, New York